UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| BILLIE M. HUGHES, | : | Case No. 3:19-cv-18 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I. Introduction

Plaintiff Billie M. Hughes brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on October 23, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Deborah F. Sanders concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders' non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since June 1, 2014. She was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has a high school education. *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #4, *PageID* #s 158-79), Plaintiff's Statement of Errors (Doc. #6), and the Commissioner's Memorandum in Opposition (Doc. #9). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential

3

steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

> Step 1: Plaintiff did not engage in substantial gainful activity during the time period between her alleged disability onset date, June 1, 2014, and her date last insured, March 31, 2016.
>
> Step 2: Through her date last insured, she had the severe impairments of type II diabetes mellitus, gout, hypertension, kidney disease, mild degenerative disc disease of his lumbar spine, morbid obesity, cardiomyopathy, depressive disorder, and borderline intellectual functioning.
>
> Step 3: Through her date last insured, she did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Through her date last insured, her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "sedentary work … subject to some additional limitations. The claimant could lift as much as 20 pounds occasionally and ten pounds frequently. She could occasionally push/pull with the lower extremities. The claimant could stand and/or walk up to two hours during any given eight-hour workday. She could sit up to six hours during any given eight-hour workday. Allowance should have been made for the opportunity to change position after every 20 minutes from standing and/or walking while remaining on task. The claimant could occasionally operate foot controls but not on a continuous basis. She could occasionally climb ramps or stairs. The claimant could not climb ladders, ropes, or scaffolds. She could occasionally balance[,] … stoop, kneel, or crouch. The claimant could not crawl. She could not work at unprotected heights or around dangerous machinery. She could not operate motor vehicles in the course of employment. The claimant could carry out simple, routine, repetitive tasks but not at a production-rate pace. She could not perform tasks involving strict production quotas. The claimant was capable of occasional interaction with co-workers and frequent interaction with supervisors. She was able to adapt to infrequent changes in the work setting. Allowance would have been necessary for the possibility of being 'off task' as much as five percent of the time during any given workday.

> Allowance would have been necessary for the possibility of absence from work for as many as six-eight days per year."

Step 4: Through her date last insured, she was unable to perform any of her past relevant work.

Step 5: Through her date last insured, she could have performed a significant number of jobs that existed in the national economy.

(Doc. #4, *PageID* #s 158-79). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability during the relevant time. *Id.* at 179.

## V. Discussion

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of her treating cardiologist, Faiq Akhter, M.D.

Dr. Akhter completed questionnaires in November 2014 and March 2015. (Doc. #4, *PageID* #s 596-98, 849-51). In November 2014, he diagnosed hypertension and cardiomyopathy. *Id.* at 597. Rather than describing Plaintiff's symptoms; his pertinent findings; consultative/diagnostic testing; and surgical or clinical intervention required for treatment, Dr. Akhter referred to his attachments. *Id.* He indicated that Plaintiff is on several medications, including Imdur, Vasotec, Dyazide, and Coreg and, "Patient is compliant with medications and based on OV [(office visit)], are effective." *Id.* at 598. He responded, "Patient continues to wear LifeVest," when asked to describe her prescribed therapy and her response to it. *Id.* When asked to describe any limitations Plaintiff's impairments impose on her ability to perform sustained work activity, Dr. Akhter responded "N/A." *Id.*

5

In March 2015, Dr. Akhter diagnosed cardiomyopathy and congestive heart failure. *Id.* at 850. Her symptoms included chest pain and shortness of breath. *Id.* Similarly to previous responses, instead of describing his pertinent findings; available consultative/diagnostic testing; and surgical or clinical intervention required for treatment, Dr. Akhter referred to his attachments. *Id.* He indicated that Plaintiff was on medications and is compliant with them. *Id.* at 851. Dr. Akhter concluded, "The patient has a medically determinable physical impairment that prevent[s] her from engaging in any gainful activity in any field of work." *Id.* (capitalization omitted).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

The ALJ assigned "no weight" to Dr. Akhter's opinion that Plaintiff "has a medically determinable physical impairment that prevents her from engaging in any gainful activity in any field of work." (Doc. #4, *PageID* #173). The ALJ correctly concluded that "Whether any documented reduction in capability renders an individual 'disabled' … is an issue to be resolved under Social Security rules and regulations." *Id*. Indeed, under the Regulations, opinions that an individual is disabled are not medical opinions "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). Accordingly, the Social Security Administration does "not give any special significance to the source of an opinion reserved to the Commissioner …" even when that source is a treating physician. *Id*. § 404.1527(d)(3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). But that does not mean an ALJ can ignore the opinion; "While controlling weight will not be provided

7

to a treating physician's opinion on an issue reserved to the Commissioner, the ALJ still must 'explain the consideration given to the treating source's opinion(s).'" *Bass*, 499 F.3d at 511 (quoting SSR 96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. at 34474).

In the present case, ALJ Sanders adequately explained the consideration given to Dr. Akhter's opinion. She discounted his opinion because it is "too vague" and "not particularly clear. (Doc. #4, *PageID* #173). Moreover, the ALJ found that Dr. Akhter's "generic statement" was not consistent "with the specific and precise definition of 'disability' for Social Security purposes."[1] *Id*. Substantial evidence supports the ALJ's findings. Dr. Akhter did not provide any specific functional limitations and did not explain his disability conclusion in any meaningful detail. Thus, this constitutes a good reasons for rejecting Dr. Akhter's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (an ALJ gave "good reasons" when he did not assign controlling weight to a treating physician's opinion he found "too inconsistent and unclear to be

---

[1] ALJ Sanders also questioned Dr. Akhter's reference to Plaintiff's "medically determinable physical impairment" rather than a specific diagnosis: "It can only be inferred that the 'medically determinable physical impairment' alluded to by Dr. Akhter is cardiomyopathy since he is a cardiologist and he diagnosed cardiomyopathy." (Doc. #4, *PageID* #173) (citation omitted). This gave Plaintiff the benefit of the doubt concerning Dr. Akhter's opinions.

helpful"); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (finding that an ALJ properly rejected the portion of an opinion that he characterized as vague).

The ALJ also discounted Dr. Akhter's opinion because the record "supports a finding that Plaintiff has a functional capacity greater than that suggested by Dr. Akhter." Specifically, the ALJ pointed to a note that Plaintiff sought medical treatment in July 2016 after falling and sustaining a left leg injury at a water park. (Doc. #4, *PageID* #173). The doctor at the hospital noted that Plaintiff presented with left ankle and lower leg pain. "She was at the water park earlier in the day. Bumped her and she fell. She twisted her left ankle. Didn't have much pain at that time to continue to enjoy the water park." *Id.* at 1684. Although one day at a water park does not demonstrate that Plaintiff could sustain full time employment, to the extent that it is not consistent with Dr. Akhter's opinion, it constitutes a good reason for discounting his opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Further, the ALJ concluded that "Objective medical evidence shows that the claimant experienced significant medical improvement in her cardiac condition with defibrillator implantation (as evidenced by the increase in left ventricular ejection fraction to a 'within-normal-limits' range of 55 percent by January 2016)." (Doc. #4, *PageID* #173). Plaintiff also takes issue with this finding. A review of the record shows that in October 2014, Plaintiff's left ventricular ejection fraction was approximately 20% to 25%. *Id.* at 774. Dr. Akhter recommended Plaintiff wear a Life Vest until an implantable cardioverter defibrillator (ICD) could be placed. *Id.* at 602. The ICD was

9

placed in February 2015. *Id.* at 770. In March 2015, Plaintiff's left ventricular ejection fraction had improved to 50%. *Id.* at 778. About seven months later, in October 2015, Plaintiff's left ventricular ejection fraction was about 55% to 60%. *Id.* at 1241. Dr. Akhter noted, "The patient had an ICD placed in the past and the ejection fraction was only 30%. However, the EF over time has improved." *Id.* at 1242. This evidence supports the ALJ's conclusion. But, in July 2016, Plaintiff's left ventricular ejection fraction was abnormal—"mildly reduced and is 40%". *Id.* at 1238. Despite these results, at Plaintiff's follow-up visit with Dr. Akhter, he noted "EF has improved." *Id.* at 1231, 1235. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's cardiac impairment improved.

In sum, the ALJ provided good reasons—supported by substantial evidence—for rejecting Dr. Akhter's opinion. Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

Date:  March 17, 2020            *s/Sharon L. Ovington*
                                 Sharon L. Ovington
                                 United States Magistrate Judge